## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LILLIE JEFFRIES** <br> 5346 Knox Street <br> Philadelphia, PA 19144 <br>                 Plaintiff, <br><br> v. <br><br> **CITY OF PHILADELPHIA**, a Municipal <br>    Corporation having principal offices <br>    located at <br> 1101 Market Street <br> Philadelphia, PA 19103 <br><br>      and <br><br> **JOSEPH TREEGOOB**, individually <br>    and in his official capacity as <br> Supervisor of the Philadelphia <br> Department of Behavioral Health and <br> Intellectual Development <br> 701 Market Street, 5th Floor, Suite 200 <br> Philadelphia, PA 19106 <br>                 Defendants | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION NO: 2:21-CV-03220 |

## **PROPOSED AMENDED COMPLAINT**

     Plaintiff Lillie Jeffries claims of Defendants, individually and/or jointly, damages in excess of One Hundred Fifty Thousand Dollars ($150,000.00) upon causes of action whereof the following is a statement:

INTRODUCTION

     Plaintiff, Lillie Jefferies brings this action against her employer. During her employment she has endured gross, degrading and repeated sexual harassment by her supervisor Joseph Treegob. Plaintiff complained and her complaints were deemed credible by City's internal investigation. Yet, no effective corrective action was taken. Plaintiff was still forced to work in close proximity to and under the supervision of Mr. Treegob. To date, Defendant has taken no remedial or corrective action regarding the sexual discriminatory and retaliatory conduct to

2

which she has been subjected.

Defendant has discriminated and continues to discriminate against Plaintiff based on her sex, and retaliated against her based on her complaints about same in violation of Title VII of the Civil Rights Act of 1964 as amended 42 U.S.C. section 1000e et seq ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. Section 951, et seq ("PHRA").

Defendants conduct by acts or omissions, also deprived Plaintiff of her constitutional rights of the Equal Protection clause of the constitution in violation of 42 U.S. Sec 1983.

## JURISDICTION, VENUE AND PARTIES

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by § 1981a (hereinafter, "Title VII"), and 42 U. S. C. §1983 and §1988 to redress violations of the Plaintiff's Equal Protection rights as guaranteed her under the 14th Amendment to the United States Constitution.   Federal Jurisdiction is invoked pursuant to 28 U.S.C. §1331 and §1343.   The Court's Pendent jurisdiction is invoked pursuant to 28 USC §1367(a).

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) inasmuch as Plaintiffs' causes of action arose in the Eastern District of Pennsylvania, and all the Defendants are found in the Eastern District of Pennsylvania.

3. Plaintiff **LILLIE JEFFRIES** (hereinafter "Plaintiff Jeffries" or "Jeffries") is an adult female individual and a citizen of the Commonwealth of Pennsylvania residing at 5346 Knox Street, Philadelphia, PA 19144.

4. Defendant **CITY OF PHILADELPHIA** is (hereinafter "CITY") is a Municipal Corporation and political subdivision located in the Commonwealth of Pennsylvania, defined as a City of the First Class under the laws of the Commonwealth of Pennsylvania,

3

and having principal offices located at 1101 Market Street, Philadelphia, PA 19103. Defendant CITY owns, operates, manages and directs the Philadelphia Department of Behavioural Health and Intellectual Development (hereinafter "Behavioral Health Department") as a Department of the City of Philadelphia which, in turn, employs the below-described Defendant and the within-described supervisory employees.   The Behavioral Health Department has principal offices at 701 Market Street, 5th Floor, Suite 200, Philadelphia, PA 19106.

5. Defendant **JOSEPH TREEGOOB** (hereinafter "Defendant Treegoob" or "Treegoob") is an adult male, and is a supervisory employee, servant, workman and/or agent of Defendants CITY and its Behavioral Health Department, having a principal office located at 701 Market Street, 5th Floor, Suite 200, Philadelphia, PA 19106.   At all times relevant hereto, Defendant Treegoob was employed by said Defendants in a Supervisory Capacity and, as such, was a policymaker for said Defendants CITY and its Behavioral Health Department.   In his supervisory capacity, his acts and failures to act were the direct and vicarious acts of Defendant CITY.   Defendant Treegoob is being sued individually and in his official capacity as Supervisor of Defendant City's Behavioral Health Department.

6. At all times relevant hereto, Defendant City was the political subdivision responsible for the training and supervision of Defendant Treegoob and for implementing and enforcing policies regarding sexual harassment in the workplace.   Defendant City delegated responsibility for implementing and enforcing its policies to those of its Supervisors managing and directing work activities in its Behavioral Health Unit.

7. At all times material hereto, Defendant CITY and its Behavioral Health Department acted or failed to act through its authorized Supervisors, agents, servants, workmen and employees including, but not limited to, Defendant Treegoob, who at all times material hereto, was acting in the course and scope of his Supervisory employment and/or agency

        with and on behalf of and/or under the management, control and/or direction of Defendant City and its Behavioral Health Department.

8. At all times material hereto, the individual Defendant was acting intentionally, maliciously, and in reckless disregard of the Plaintiff's right to be free from sex discrimination and retaliation.

9. At all times relevant hereto, Defendants City and Treegoob, and Defendant City's several supervisory employees as described herein, were all acting under color of law, and their acts and failures to act, as supervisory employees, were the direct acts and failures to act of Defendant City, for which Defendant City was directly and vicariously liable.

## ADMINISTRATIVE PROCEDURES

10. Plaintiff filed charges of sex discrimination and retaliation against the Defendants with the District Office of the Equal Employment Opportunity Commission. In EEOC, Charge No. 530 - 2020 – 01285, the complaint for this matter was filed on July 20, 2021.

11. Plaintiff also received a Notice of Right to Sue Within 90 Days from the U. S. Department of Justice dated 10 May 2021.   A copy of the Notice of Right to Sue" is attached and marked as Exhibit "A".

## GENERAL ALLEGATIONS

12. While attending a local academic institution in 2001, Plaintiff Jeffries was sexually assaulted and molested, which left her emotionally scarred and sensitive to unwanted sexual provocations and overtures, and required her to seek therapy and other treatment from that time to the present.

13. Plaintiff Jeffries began working for Defendant City's Behavioral Health Department in July 2016, and her immediate supervisor was Defendant Treegoob.

14. From the time Plaintiff Jeffries began working with Behavioral Health Department until on or about September 25, 2016, Defendant Treegoob began regularly, intentionally and

5

continuously subjecting her to sexually suggestive and demeaning comments, false accusations, and sexually suggestive work positions that detrimentally affected the Plaintiff and would have detrimentally affected any reasonable female in the same position as the Plaintiff.

15. More specifically, between the time Plaintiff Jeffries began to work with the Behavioral Health Department until the filing of the instant Complaint, a period exceeding four years, Defendant Treegoob has continually, regularly, intentionally and deliberately harassed Plaintiff Jeffries by making offensive sexually suggestive remarks about her physical looks and smells so as to create a sexually offensive, oppressive and hostile work environment for her.

16. At no time in over four years did Defendant Treegoob make any sexually suggestive remarks about the physical looks or smells of any male employees, and only made them to the Plaintiff, a female, for no other reason than because she was a female.

17. Defendant CITY's failure to supervise, train or discipline Defendant Treegoob, and to allow his sexually offensive conduct to continue, Defendant CITY's inaction and failure to do any followup on its findings of sexual harassment policy violations as described herein, established its deliberate indifference to Plaintiff's rights to be protected against sexual harassment on the job, and established Defendant CITY's policy and/or patterns of acceptance and tolerance of sex discrimination and harassment.

**OPERATIVE ALLEGATIONS**

18. In July 2016, the very same month Plaintiff Jeffries began working, Defendant Treegoob met with the Plaintiff alone in his office ostensibly to acquaint her with his work expectations.

19. During this meeting, he advised her to limit her work-related communications to him alone, and to avoid work-related contact with other supervisors, and to first seek his

6

permission before contacting any other supervisor.

20. During this meeting, he informed her that he had received a report that she had been wandering around aimlessly, but when she denied having done so, he called her a liar and gave her a "special assignment" that she considered demeaning.

21. More specifically, after being told that she would be given a "special assignment", Plaintiff Jeffries was given multiple assignments outside her job description and for no other reason than to demean and belittle her.

22. Shortly after that initial meeting, weekly meetings were held, and at each weekly meeting Defendant Treegoob demeaned and belittled her publicly by telling her in front of other employees that she was not going to make it through her probationary period and that, because he had not been present when she interviewed for her new position, he had not approved or recommended her for it.

23. The Plaintiff believes, and therefore avers, that Defendant Treegoob made such publicly demeaning and disparaging remarks about her for no other reason than that she was a female, where no such similarly disparaging and demeaning remarks were made toward male employees.

24. In or about September 2016, Plaintiff Jeffries reported Defendant Treegoob's comments about her not making it past probation to Supervisor David Lara, and he advised her to begin keeping a log of similar events.

25. In or about January or February 2017, when Defendant Treegoob was out of work for the day, a co-worker joked that the Plaintiff wore a "cat suit" to work; this joke was taken seriously, but after another supervisor saw the Plaintiff, that supervisor realized that the "cat suit" allegation had been just a joke.

26. Still, when Defendant Treegoob returned to work the next workday and learned of the "cat suit" prank, Defendant Treegoob remarked suggestively that, because she "looked

7

good", he was the only person whose opinion about how she looked the Plaintiff need consider, a remark that the Plaintiff found personally offensive.

27. After the "cat suit" incident, Defendant Treegoob continued making sexually suggestive remarks and comments about and toward her, but which she in no way encouraged.

28. On many occasions after February 2017, Defendant Treegoob summoned the Plaintiff into his office for various purposes only to tell her that she "smelled good" or that she "looked good", which comments were entirely unsolicited or encouraged and which the Plaintiff found offensive and insulting.

29. The Plaintiff believes, and therefore avers, that Defendant Treegoob made such sexually suggestive and offensive remarks about her for no other reason than that she was a female, where no such similarly disparaging and demeaning remarks about personal smells and looks were made toward male employees, and she in no way encouraged the comment.

30. On one occasion, Defendant Treegoob accompanied Plaintiff Jeffries to a meeting at one of the agencies she was assigned to oversee, and while at that meeting at which there were two other males, Plaintiff began trying to speak to the people at that agency, but Defendant Treegoob kept interrupting her to remark that "Oh she doesn't know what she is talking about because she is new and I'll explain it to you," and then told her to be quiet.

31. In or about February 2017, Plaintiff Jeffries complained to Supervisor Kevin Aleem, and therefore to Defendant City, about Defendant Treegoob's remarks and sexually suggestive and disparaging treatment, and he advised her to document what was happening.

32. That same month, Plaintiff Jeffries met with Defendant Treegoob's supervisor, Ms. Lynette McMillan, who was also the Unit Manager and, therefore Defendant City, and

8

reported to her about Defendant Treegoob's many sexually suggestive and demeaning remarks made toward her, especially about how she looked and smelled, and about the February 2017 meeting that he attended with her.

33. Plaintiff Jeffries also reported to Ms. McMillan that, on several occasions, Defendant Treegoob summoned her into his office and, with the doors to his office closed, made her sit next to him in close physical proximity ostensibly so that the two of them could see the computer together, a situation that she found uncomfortable and threatening, and which she did not encourage.

34. Ms. McMillan then told the Plaintiff that she would talk with Defendant Treegoob about the matters and that, if the incidents continued, the Plaintiff should let her know.

35. Ms. McMillan, and therefore Defendant City, made no effort to discipline, train or instruct Defendant Treegoob regarding sexual harassment in the workplace or otherwise protect her from such harassment.

36. Despite having reported the matter to Ms. McMillan, Defendant Treegoob continued to make sexually suggestive comments about her attire, such as "You look good", "You smell good", "You look pretty" and "I know Lillie was here because I can smell her, she smells good, all of which were unsolicited and which made her uncomfortable, and which she in no way encouraged them.

37. Defendant Treegoob also made disparaging remarks about her work in front of other employees.

38. Again, Defendant Treegoob made such sexually offensive and suggestive remarks toward her for no other reason than that she was a female, since Defendant Treegoob did not make any such similarly sexually suggestive remarks toward male employees.

39. In or about the summer of 2017 or the beginning of 2018, and because Defendant Treegoob continued making unsolicited sexually suggestive and offensive remarks about

her, and made disparaging remarks about her work, Plaintiff Jeffries again spoke with Ms. McMillan, and therefore with Defendant City, about these matters.

40. Following this second complaint, Ms. McMillan arranged a meeting between herself, Plaintiff Jeffries and Defendant Treegoob, and at the meeting, she advised Defendant Treegoob that he should not close the door to his office when he met with the Plaintiff in his office, and that he should not ask her to go behind his desk.

41. Despite that meeting, and in retaliation for her having reported his conduct to his supervisor, Defendant Treegoob only ceased the offensive behavior for a short period before resuming it; Plaintiff Jeffries again reported the conduct to Ms. McMillan.

42. Again, Ms. McMillan asked Plaintiff Jeffries and Defendant Treegoob to come to her office, but this time the meeting was to address the resignation of another female employee, Lamilla Williams, whom Defendant Treegoob claimed resigned only because Plaintiff Jeffries had disparaged him to the employee.

43. This accusation was untrue and entirely pretextual, and Defendant Treegoob made it for no other reason than to retaliate against her for having reported him to his supervisor, Ms. McMillan.

44. The Plaintiff believes, and therefore avers, that the female employee resigned because Defendant Treegoob began to sexually harass her as he did the Plaintiff, and that he retaliated against her as well after she reported Defendant Treegoob to supervisor David Lara, and therefore to Defendant City.

45. When Plaintiff Jeffries denied having disparaged Defendant Treegoob, he became angry with her and began shouting at her as to what he would or would not tolerate.

46. Although Plaintiff was not represented by any union representative during her meetings with Ms. McMillan, and McMillan had taken no meaningful steps to protect the Plaintiff from Defendant Treegoob's sexual harassment, Plaintiff still confided in Ms. McMillan,

and therefore in Defendant City, regarding Defendant Treegoob's continued inappropriate behavior, both in public and private.

47. At one point, however, Defendant Treegoob visited her work area and pleaded with her "Let's make up; I know you didn't do that to me," but the Plaintiff loudly demanded that he get away from her.

48. Plaintiff Jeffries thereupon left her work area just to get away from Mr. Treegoob.

49. Thereafter, Mr. Treegoob continued to confront her to tell her how good she looked and smelled, and she found such unsolicited confrontations offensive and degrading, and she in no way encouraged them.

50. On yet another occasion in the summer of 2018 when the Plaintiff wore a black dress and heels to work, Defendant Treegoob said that she looked like the cartoon character, Jessica Rabbit, a scantily clad and sexually suggestive character in a popular movie, "Who Shot Roger Rabbit".

51. Plaintiff Jeffries found Defendant Treegoob's comment inappropriate and offensive, given the sexually suggestive nature of the cartoon character.

52. On Friday June 22, 2019, Plaintiff texted Defendant Treegoob to inform him that she would not be in to work that day, but he did not reply to the Plaintiff's communication.

53. At 12:07 AM the following Saturday morning, Defendant Treegoob texted the Plaintiff asking that she remind him to sign her amended time sheet and asking if she had seen some drama or the other, but she responded that she had not.

54. Later that morning, he texted her to apologize for having texted her so late; she then telephoned his request, and he apologized explaining that he must have been drunk and thinking about her, and then he abruptly hung up.

55. On July 22, 2019, upon seeing Plaintiff Jeffires' new hair color, Defendant Treegoob commented that "We have a new employee; what happened to Lillie and who is this new

co-worker that we have," and "what shall we call her"; Plaintiff Jeffries responded by saying that he was to call her Lillie, which was her name.

56. In or about late August or early September 2019, while Plaintiff Jeffries was standing outside her building on a break, Defendant Treegoob approached her as she spoke on her telephone and asked her what was the matter, as she appeared visibly upset.

57. When Plaintiff Jeffries told him that she just learned that a high-ranking City official had resigned amid accusations of infidelity, Defendant Treegoob dismissed the accusation as being "nothing" and saying that infidelity on the job happens all the time, and that he cheated on his wife, Becky, as well, but had to terminate the relationship when the woman with whom he had been cheating became too attached.

58. Plaintiff Jeffries walked away from Defendant Treegoob in order to terminate the unwanted and unsolicited conversation, but he followed her and kept talking.

59. On or about September 20, 2019, an office shower party was given for one of the co-workers, and Plaintiff Jeffries was assigned to give out food and cake to the office employees.

60. When Plaintiff Jeffries attempted to deliver food to Defendant Treegoob, he remarked suggestively "I don't know what I could have done to make you love me so much".

61. In response, Plaintiff Jeffries told him it was just food and cake given to everyone; she left the food on his desk and left his office.

62. As before, Plaintiff Jeffries found the unsolicited remark and its sexual overtones offensive and oppressive, but just one more incident of the generally sexually hostile work environment under which she had to work.

63. On September 25, 2019, when the Plaintiff was enroute from her work cubicle to an all staff and provider meeting, Defendant Treegoob accosted her in a hallway and, after asking her where she was going, remarked loudly that she looked "sexy as hell".

12

64. In response, Plaintiff Jeffries hand-gestured to him to stop talking with her.

65. When the loudness of his comment prompted a female co-worker to question jokingly why Defendant Treegoob had not commented on her attire like that, Defendant Treegoob responded that the other female co-worker did not look as hot as the Plaintiff; he asked the female employee "Do you see her; she looks hot as hell in that dress."

66. In yet further response to Defendant Treegoob's loud remark about the Plaintiff, yet another co-worker came into the hallway to ask Defendant Treegoob why he was talking to them like that, and to tell him that he needed to stop.

67. After the September 25, 2019 incident, on October 2, 2019, Plaintiff Jeffries submitted a written sexual harassment complaint about Defendant Treegoob's continued and relentless sexual harassment to Defendant City's Human Resources Department, Internal Management of IDS and Employee Relations Unit to the Mayor's office.

68. On or about October 6, 2019, in response to the Plaintiff's concerns about working under Defendant Treegoob, Plaintiff Jeffries was finally reassigned to report directly to Ms. McMillan, until she retired; after she retired, the Plaintiff was directed to report directly to the Assistant Director.

69. Despite this reassignment, Defendant Treegoob continued to make sexually suggestive remarks and gestures toward her whenever and wherever an opportunity to do so arose.

70. In late November 2019, in response to Defendant Treegoob's continued efforts to harass her with sexually suggestive and offensive remarks, Plaintiff Jeffries asked to be removed from the cubicle in which she worked, which remained near Defendant Treegoob's office, to another location away from his office so that she would not be anywhere near him at work. After she filed, she asked to be moved from the front to an area behind the main entrance. Nonetheless, Treegob stated intruding into Plaintiff's workspace and began to intimidate her.

71. As of April 7, 2020, Plaintiff had not heard the results of that investigation begun after filing the October 2, 2019 complaint.

72. Despite the pendency of the investigation, and despite the change in the physical location of her work cubicle, whenever Plaintiff Jeffries' path crossed Defendant Treegoob's, he continued to make sexually suggestive remarks about her looks or the way she smelled, and these scattered remarks continued well into the year 2020.

73. On or about June 15, 2020, Defendant City's Mayor's Office of Labor Relations, Employee Relations Unit, emailed Plaintiff Jeffries in response to her earlier-filed complaint against Defendant Treegoob, and reported that the investigation into her complaint had concluded.

74. Defendant City reported to Plaintiff that the Employee Relations Unit's conclusion was that Defendant Treegoob had violated Defendant City's Sexual Harassment Prevention Policy as well as the Mayor's Statement of Policy on Equal Employment Opportunity, and that the Employment Relations Unit had provided the Appointing Authority of the Department of Behavioral Health Intellectual Disability Service with a copy of the investigation report, which included a recommendation of appropriate administrative and disciplinary action that should be taken.

75. Despite the June 15, 2020 investigation report and its recommendation of appropriate administrative and disciplinary action that should have been taken by the supervisory personal directing activities in the Behavioral Health Department, including Defendant Treegoob's immediate and direct supervisors, Defendant CITY did no followup on that report and took no steps to train, supervise or discipline Defendant Treegoob for his known violations of City policies regarding sexual harassment, thus allowing his sexually offensive conduct toward Plaintiff to continue.

76. Because Defendant CITY did no followup on its earlier report and took no steps to train,

14

supervise or discipline Defendant Treegoob, his sexually offensive conduct toward the Plaintiff continued, and Plaintiff Jeffries was forced to prepare and file a second Charge of Discrimination, EEOC No. 530-2021-04027. As a result, Plaintiff received a Notice of Right to Sue dated February 04, 2022.

77. As a direct and proximate result of the continued, regular and pervasive sexual harassment to which she has been subjected for over four years, and as a result of Defendant CITY's failure, as a pattern or practice of such failure to train, supervise, instruct or discipline Defendant Treegoob regarding sexual harassment, Plaintiff Jeffries has continued to experience sexual harassment at the hands of Defendant Treegoob, loss of professional stature, mental anguish, anxiety, humiliation, and embarrassment, all of which has had a detrimental effect on her well-being and work performance.

78. Further, as a result of still being treated on an ongoing basis as a result of a prior sexual harassment experience, which caused severe post-traumatic anxiety, the conduct of Defendant Treegoob's conduct coupled with Defendant CITY's failure to take meaningful corrective action regarding Defendant Treegoob's and others' behavior, defendants have aggravated a pre-existing condition for which Plaintiff had been treating.

**FEDERAL CLAIMS**

**COUNT I: Plaintiff v. Defendant CITY OF PHILADELPHIA**
**Violation of 42 U. S. C. §1983; 14th Amendment**

79. The Allegations contained in all preceding paragraphs are incorporated here as if set forth fully and here reiterated in their entirety.

80. The acts and failures to act of Defendant TREEGOOB, and other Supervisory personnel, individually and/or jointly, all of whom acted under color of law, caused the Plaintiff to be subjected to the deprivation of her rights to equal protection of the law as guaranteed her under the Fourteenth Amendment to the United States Constitution.

15

81. The acts and failures to act of Defendant TREEGOOB, and other Supervisory personnel, were direct acts and failures to act of Defendant CITY.

82. The acts and failures to act of Defendant TREEGOOB, and other Supervisory personnel, violated the Plaintiff's right to Equal Protection of the Law guaranteed her under the 14th Amendment to the U. S. Constitution, redressable under 42 U. S. C. §1983.

**WHEREFORE**, the Plaintiff prays for Judgment against the defendant named in this Count, individually and/or jointly, for damages in excess of One Hundred Fifty Thousand Dollars ($150,000.00), and for reasonable attorneys fees pursuant to 42 USC §1988(b).

### COUNT II: Plaintiff v. Defendant JOSEPH TREEGOOB, Individually
### Violation of 42 U. S. C. §1983; 14th Amendment Due Process

83. The Allegations contained in all preceding paragraphs are incorporated here as if set forth fully and here reiterated in their entirety.

84. The direct and retaliatory acts and failures to act of Defendant TREEGOOB, who acted under color of law, caused the Plaintiff to be subjected to the deprivation of her rights to equal protection of the law as guaranteed her under the Fourteenth Amendment to the United States Constitution.

85. The acts and failures to act of Defendant TREEGOOB were his intentional individual acts, and violated the Plaintiff's right to Equal Protection of the Law guaranteed her under the 14th Amendment to the U. S. Constitution, redressable under 42 U. S. C. §1983.

**WHEREFORE**, the Plaintiff prays for Judgment against the defendant named in this Count for damages in excess of One Hundred Fifty Thousand Dollars ($150,000.00), and for reasonable attorneys fees pursuant to 42 USC §1988(b).

### COUNT III: Plaintiff v. Defendant CITY
### (Violation to Title VII, 42 USC §2000e-2(a)(1)

86. The allegations in all preceding paragraphs are incorporated and made part of this paragraph as if fully set forth here.

87. The acts and/or failures to act of   of Defendant TREEGOOB, which were the acts and failures to act of Defendant CITY, discriminated against the Plaintiff in the terms and conditions of her employment and denied her of rights and/or protections secured to her by the Equal Protection Clause of the Fourteenth Amendment.

88. The acts and failures to act of Defendant TREEGOOB, which were the acts and failures to act of Defendant CITY, discriminated against the Plaintiff on the basis of her sex and constituted an unlawful employment practice in violation of 42 U. S. C. 2000e-1.

**WHEREFORE**, the Plaintiff prays for Judgment against the defendant named in this Count, individually and/or jointly, for damages in excess of One Hundred Fifty Thousand Dollars ($150,000.00), and for reasonable attorneys fees pursuant to 42 USC §1988(b).

### COUNT IV: Plaintiff v. Defendant CITY
### (Violation to Title VII, 42 §USC 2000e-2(a)(2)

89. The Allegations contained in all preceding paragraphs are incorporated here as if set forth fully and here reiterated in their entirety.

90. The acts and/or failures to act of Defendant TREEGOOB, which were the acts and failures to act of Defendant CITY, discriminated against the Plaintiff by serving to limit, segregate and classify her in a way which deprived her of employment opportunities and adversely affected her status as an employee because of her sex.

91. The acts and failures to act of Defendant TREEGOOB, which were the acts and failures to act of Defendant CITY, discriminated against the Plaintiff on the basis of her sex and constituted an unlawful employment practice in violation of 42 U. S. C. 2000e-2(a)(2).

**WHEREFORE**, the Plaintiff prays for Judgment against the defendant named in this Count IV for damages in excess of One Hundred Fifty Thousand Dollars ($150,000.00), and for reasonable attorneys fees pursuant to 42 USC §1988(b).

### COUNT V: Plaintiff v. Defendant CITY and JOSEPH TREEGOOB

**(VIOLATION OF TITLE VII, 42 U. S. C. §2000(e)-3(a))**

92. The Allegations contained in all preceding paragraphs are incorporated here as if set forth fully and here reiterated in their entirety.

93. The acts and failures to act of Defendant TREEGOOB, specifically the acts of accusing the Plaintiff of disparaging him to an employee who had resigned her position, and further refraining for a short while before resuming his sexual harassment of the Plaintiff, retaliated against the Plaintiff for filing reports of sexual discrimination and harassment with Defendant CITY.

94. The acts and failures to act of Defendant TREEGOOB, which were the acts and failures to act of Defendant CITY and its Behavioral Health Department, constituted an unlawful employment practice proscribed by 42 U. S. C. §2000e-3(a).

95. As a result of Defendant TREEGOOB's actions, and therefore Defendant CITY's actions, the Plaintiff has and may be impaired in her employment opportunities, and has suffered loss of income, loss of professional stature, mental anguish, embarrassment, humiliation, and loss of self-esteem in violation of 42 U. S. C. §2000(e)-3(a).

**WHEREFORE**, the Plaintiff prays for Judgment against the defendants named in this Count V, individually and/or jointly, for damages in excess of One Hundred Fifty Thousand Dollars ($150,000.00), and for reasonable attorneys fees pursuant to 42 USC §1988(b).

**STATE LAW CLAIMS**

**COUNT VI:   Plaintiff -v- Defendant City of Philadelphia and Joseph Treegob**
**(Violation of   42 Pa. C. S. §955(a))**

96. The Allegations contained in all preceding paragraphs are incorporated here as if set forth fully and here reiterated in their entirety.

97. The Plaintiff remains the best able and most competent to perform her services as a Program Analyst for Defendant CITY's Department of Behavioural Health and

Intellectual Development , which services she has performed for many years.

98. The acts and failures to act of Defendant TREEGOOB, which were the acts and failures to act of Defendant CITY, tended to discriminate against the Plaintiff with respect to compensation, hire, tenure, terms, conditions or privileges of her employment on the basis of her sex.

99. The acts and failures to act of Defendant TREEGOOB, which were the acts and failures to act of Defendant CITY, constituted an unfair employment practice proscribed by 42 Pa. C. S. §955(a).

**WHEREFORE**, the Plaintiff prays for Judgment against the defendant named in this Count VI, individually and/or jointly, for damages in excess of One Hundred Fifty Thousand Dollars ($150,000.00), and for reasonable attorneys fees and costs as may be allowed by law.

**COUNT VII:    Plaintiff -v- Defendant City of Philadelphia and Joseph Treegob
(Violation of   42 Pa. C. S. §955(d))**

100. The Allegations contained in all preceding paragraphs are incorporated here as if set forth fully and here reiterated in their entirety.

101. 43 Pa. C. S. §955(d) proscribes any person or employer from discriminating in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

102. The Defendants, individually and jointly, intentionally and wilfully    discriminated and retaliated against the Plaintiff because she opposed discriminatory prac-tices forbidden by 43 Pa. C. S. §955 and made a charge against the Defendants with the Pennsylvania Human Relations Commission, all in violation of 43 Pa. C. S. §955(d).

103. As a result of the conduct of the defendants, the Plaintiff has suffered a loss of professional stature, mental anguish, embarrassment, humiliation, and loss of self-

esteem.

**WHEREFORE**, the Plaintiff prays for Judgment against the defendant named in this Count VII, individually and/or jointly, for damages in excess of One Hundred Fifty Thousand Dollars ($150,000.00), and for reasonable attorneys fees and costs as may be allowed by law.

Respectfully submitted,

**MINCEY, FITZPATRICK ROSS, LLC**

_____
Isaac H. Green, Jr., Esquire, I. D. #36059
1650 Market Street, Suite 3600
Philadelphia, Pa 19103
Telephone: 215 - 587 - 0006
Telefax: 215 - 587 - 0628