IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LILLIE JEFFERIES,<br>*Plaintiff* | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| CITY OF PHILADELPHIA, et al.<br>*Defendants* | : <br> : | No. 21-3220 |

### MEMORANDUM

PRATTER, J.                                                                    JULY 26, 2023

Lillie Jefferies is an employee of the City of Philadelphia. She alleges that her former supervisor, Joseph Treegoob, sexually harassed her. Relating to this alleged harassment, Ms. Jefferies asserts violations of her Fourteenth Amendment due process rights under 42 U.S.C. § 1983, and discrimination and retaliation claims under Title VII and the Pennsylvania Human Relations Act against Mr. Treegoob and the City. Mr. Treegoob and the City argue that they are entitled to summary judgment on all of Ms. Jefferies claims. For the reasons that follow, the Court grants Mr. Treegoob's and the City's motions for summary judgment.

### BACKGROUND[1]

Ms. Jefferies began working for the City of Philadelphia's Community Services Management Unit, which is part of the City's Department of Behavioral Health and Intellectual Disability Services, on July 5, 2016. Ms. Jefferies alleges that soon after she started working for the City, Mr. Treegoob—her direct supervisor—began sexually harassing her. Ms. Jefferies alleges that Mr. Treegoob made repeated and unwelcome sexually suggestive comments to her about her

---

[1] The facts set forth herein are not disputed by the parties. In her response to Mr. Treegoob and the City of Philadelphia's Statements of Material Facts, Ms. Jefferies responded that these facts were "Admitted." *See generally* Pl.'s Resp. to Defs.' Treegoob and City of Philadelphia's Material Facts, Doc. No. 54.

1

physical appearance. In August 2018, in response to an email from a supervisor asserting that sexual harassment would not be tolerated in the Department of Behavioral Health and Intellectual Disability Services, Mr. Treegoob acknowledged that his comments to Ms. Jefferies could be construed as sexual harassment and he said he would try to stop making such comments. However, Mr. Treegoob's sexual harassment of Ms. Jefferies did not stop and allegedly continued through 2018 and into 2019.[2]

Ms. Jefferies formally raised her concerns regarding Mr. Treegoob's alleged sexual harassment with the City of Philadelphia on October 2, 2019 when she submitted a written complaint to the City's Human Resources Department. Later that same day, Ms. Jefferies was reassigned to report to a different direct supervisor, and her workstation was later moved to the opposite side of the floor from Mr. Treegoob's office.

Ms. Jefferies remains employed by the City of Philadelphia. At no point has her pay been reduced; rather, Ms. Jefferies has received salary increases totaling $25,000.00 since beginning her employment with the City in 2016. Ms. Jefferies has not been suspended without pay at any time. She has continued to receive strong performance reviews for her work at the City in the years after making her sexual harassment complaint. Ms. Jefferies's Amended Complaint alleged numerous causes of action: Fourteenth Amendment due process violations under 42 U.S.C. § 1983 against the City and Mr. Treegoob (Counts I and II); discrimination and retaliation claims under

---

[2]  The following facts regarding Mr. Treegoob's alleged sexual harassment of Ms. Jefferies are not in dispute: (1) Mr. Treegoob compared Ms. Jefferies to Jessica Rabbit after she changed her hair, (2) Mr. Treegoob texted Ms. Jefferies at 12:07 AM in the morning and called her the next day, (3) Mr. Treegoob told Ms. Jefferies that he had cheated on his wife and said that everybody messes around on their wives, (4) Mr. Treegoob said to her "What makes you love me so much" when Ms. Jefferies handed him a piece of cake at an office party, (5) when Ms. Jefferies was wearing a sweater and heels, Mr. Treegoob walked behind her and said "Dang. You look good as hell," and (6) Mr. Treegoob said that Ms. Jefferies looked "hot as hell." Pl.'s Resp. to Defs.' Treegoob and City of Philadelphia's Material Facts ¶¶ 57–58, 60–61, 65–67, 70, 72.

Title VII against the City (Counts III, V);[3,4] and discrimination and retaliation claims under § 955 of the Pennsylvania Human Relations Act (PHRA), 43 Pa. Const. Stat. § 951 *et seq.*, against the City (Counts VI, VII). As a result of various pre-trial stipulations, only Counts I, II, III, V, VI, and VII remain. Mr. Treegoob and the City separately filed motions for summary judgment as to all of Ms. Jefferies's respective claims against them. Having now been fully briefed and argued, these motions are ripe for resolution.[5]

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The movant bears the initial responsibility to establish the basis for the motion for summary judgment and identify the portions of the record that demonstrate the absence of a genuine dispute

---

[3] Ms. Jefferies stipulated in her response in opposition to the motion for summary judgment that she was voluntarily withdrawing her Title VII claims (Counts III, IV, and V) against Mr. Treegoob.

[4] By way of stipulation, the parties voluntarily dismissed Count IV by which Ms. Jefferies alleged a violation of 42 U.S.C. § 2000e(2)(a)(2), against the City.

[5] In her response in opposition to Mr. Treegoob's motion for summary judgment, Ms. Jefferies failed to address Mr. Treegoob's arguments regarding the PHRA claims. Thus, Ms. Jefferies's PHRA claims against Mr. Treegoob will be deemed waived. *See Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014). "[W]hen a plaintiff responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure constitutes an abandonment of th[o]se causes of action and essentially acts as a waiver of these issues." *Id.* (internal quotation marks omitted). In *Campbell*, this Court concluded that "[b]ecause [the plaintiff] has failed to address [the defendant's] retaliation argument in her response, she has failed to meet her burden of identifying specific facts showing a genuine issue as to any retaliation claim." *Id.* The rationale for this is that summary judgment is only appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on an issue, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

### I. Fourteenth Amendment Due Process Claims

Ms. Jefferies asserts two claims under 42 U.S.C. § 1983 alleging Fourteenth Amendment due process violations.[6] The Due Process Clause "protects against deprivation of federal- or

---

[6] To the extent Ms. Jefferies attempts to bring a Fourteenth Amendment equal protection clause retaliation claim or disparate treatment claim under § 1983, her claims fail because the Third Circuit Court of Appeals has not recognized such claims. *See e.g., Pepitone v. Twp. of Lower Merion*, No. 19-cv-1447, 2020 WL 4604481, at *5 (E.D. Pa. Aug. 10, 2020) ("[R]etaliation does not implicate the Fourteenth Amendment's Equal Protection Clause in this jurisdiction.") (citing *Oras v. City of Jersey City*, 328 F. App'x 772, 775 (3d Cir. 2009)); *Brennan v. City of Phila.*, No. 18-cv-1417, 2018 WL 4566134, at *5 (E.D. Pa. Sept. 21, 2018) (noting that the Third Circuit Court of Appeals has not recognized a claim of retaliation under the Fourteenth Amendment's Equal Protection Clause); *Thomas v. Independence Twp.*, 463 F.3d 285, 298 n.6 (3d Cir. 2006) ("[A] pure or generic retaliation claim [ ] simply does not implicate the Equal Protection Clause.") (quoting *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997)); *Marion v. City of Phila./Water Dep't*, 161 F. Supp. 2d 381, 386 n.2 (E.D. Pa. 2001) ("Unlike her claims for discrimination, which are grounded in the Equal Protection Clause of the Fourteenth Amendment, plaintiff's claims for retaliation and disparate treatment rest on Title VII. These claims may not proceed under § 1983."); *Bair v. City of Atl. City*, 100 F. Supp. 2d 262, 266, 267 n.3 (D.N.J. 2000) ("[A] claim for retaliation, which was created by Title VII and is not recognized under constitutional principles, may not be pursued through

4

state-created protected interests without constitutionally adequate process, such as notice and the opportunity to be heard (procedural due process)." *Jones v. Twp. of Middletown*, No. 11-cv-564, 2011 WL 3157143, at *3 (E.D. Pa. July 26, 2011) (citing *Daniels v. Williams*, 474 U.S. 327, 339 (1986) (Stevens, J., concurring)). "The Due Process Clause [also] protects an individual from state deprivation of constitutionally created rights for reasons so arbitrary, or by conduct so egregious, that it 'shocks the conscience,' regardless of the adequacy of the procedures used (substantive due process)." *Jones*, 2011 WL 3157143, at *3 (citing *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006)). The Court must determine whether the plaintiff asserts procedural or substantive due process claims because "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir. 1989). Here, it is not apparent whether Ms. Jefferies alleges procedural due process claims or substantive due process claims. The Court will thus address both categories of due process claims in turn. *See, e.g., Jones*, 2011 WL 3157143, at *3.

### A. Procedural Due Process

"The Fourteenth Amendment of the Constitution forbids a state from depriving persons of life, liberty, or property without due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). "When a plaintiff sues under 42 U.S.C. § 1983 for a state actor's failure to provide procedural due process, [courts] employ the familiar two-stage analysis, inquiring (1) whether the asserted individual interests are encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." *Id.* (quoting *Robb v. City of Phila.*, 733 F.2d 286, 292 (3d Cir. 1984)) (internal quotation marks and citation omitted). "[T]o have a property interest in a benefit that is protected

---

Section 1983."). Therefore, the Court will address Ms. Jefferies's Fourteenth Amendment claims only to the extent she alleges violations of her due process rights.

5

by procedural due process, 'a person clearly must . . . have a legitimate claim of entitlement to it.'" *Robb*, 733 F.2d at 292 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577.

Mr. Treegoob and the City of Philadelphia argue that Ms. Jefferies's claims are properly considered procedural due process claims and that the relevant property and liberty interests include pursuing one's chosen occupation and reputation. "[T]he liberty to pursue a calling or occupation" is a protected property and liberty interest under the Fourteenth Amendment. *Piecknick v. Commonwealth of Pa.*, 36 F.3d 1250, 1259 (3d Cir. 1994) (providing that "[t]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the . . . Fourteenth Amendment[]," and that "the right to a specific job . . . is [not] secured by the Fourteenth Amendment"); *accord Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley, Pa.*, 385 F. App'x 135, 141 (3d Cir. 2010).

"[R]eputation alone is not an interest protected by the Due Process Clause." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing *Paul v. Davis*, 424 U.S. 693, 712 (1976)). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (citing *Paul*, 424 U.S. at 701). The Third Circuit Court of Appeals has explained that

> [i]n the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest. The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus."

6

*Hill*, 455 F.3d at 236 (internal citation omitted). The "stigmatizing statement" must be "made publicly." *Id.*

Ms. Jefferies fails to make out a procedural due process claim because she has failed at the first stage of the "familiar two-stage analysis"—that is, she has not established that she was deprived of a protected liberty or property interest. *Alvin*, 227 F.3d at 116; *see, e.g., Sawicki v. Kipphan*, No. 21-cv-2031, 2023 WL 3061850, at *8 (M.D. Pa. Apr. 24, 2023) (concluding that plaintiff's "procedural due process claim fails, because she has failed to allege that she has been deprived of this interest [to practice a chosen profession free from unreasonable state interference], as she has not alleged that she has lost her license to practice law or that her license has been otherwise impaired"). After reporting Mr. Treegoob's alleged sexual harassment to the City, Ms. Jefferies was not terminated, demoted, transferred, or suspended. In fact, the City still employs Ms. Jefferies, she has received numerous salary increases, and she has continued to receive positive performance evaluations for her work. Thus, it is entirely unclear how Ms. Jefferies was deprived of a protected property or liberty interest when there is no allegation that her ability to pursue her current career was impacted. The Court finds that Ms. Jefferies failed to establish that she was deprived of a protected property and liberty interest, so to the extent she asserts a procedural due process claim on the basis of a protected interest to pursue her chosen occupation, it fails.

To the extent that Ms. Jefferies claims she was deprived of a protected property or liberty interest relating to her reputation, her due process claim still fails because she has not alleged that Mr. Treegoob or the City "create[d] and disseminate[d] a false and defamatory impression about [her] in connection with [her] termination," in part because, as discussed above, Ms. Jefferies was not terminated, demoted, transferred, or suspended, and the City still employs her. *Hill*, 455 F.3d

at 236. Thus, Ms. Jefferies has failed to make out a procedural due process claim relating to her reputation under the "stigma-plus" test. *See id.*

Therefore, the Court grants Mr. Treegoob's and the City's motions for summary judgment on the Fourteenth Amendment claims to the extent Ms. Jefferies invokes procedural due process.

### B. Substantive Due Process

Ms. Jefferies argues that she has pled a substantive due process claim. "Substantive due process is a 'component of the [Fourteenth Amendment] that protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 155 (3d Cir. 2018) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). The Third Circuit Court of Appeals has "recognized that 'two very different threads' make up 'the fabric of substantive due process': substantive due process relating to legislative action and substantive due process relating to non-legislative action." *Newark Cab*, 901 F.3d at 155 (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000)). "Generally, legislative acts are laws and broad executive regulations [that] apply to large segments of society, while non-legislative acts typically apply to one person or to a limited number of persons." *Murray v. City of Phila.*, 481 F. Supp. 3d 461, 472 (E.D. Pa. 2020) (internal quotation marks and citations omitted). Ms. Jefferies's claims fall within the latter category.

To establish a "non-legislative substantive due process claim," the plaintiff must have been deprived of a fundamental protected property or liberty interest. *Newark Cab*, 901 F.3d at 155. When the conduct at issue was perpetrated by a government official, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to *shock the contemporary conscience*." *Kaucher*, 455 F.3d at 425 (emphasis added). Whether conduct shocks the conscience "depends upon the circumstances of a particular case." *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999).

8

Ms. Jefferies alleges that Mr. Treegoob's sexually harassing conduct is so egregious and outrageous that it can be fairly said to "shock the contemporary conscience." *Kaucher*, 455 F.3d at 425. Thus, she contends, she has adequately alleged a substantive due process claim. Ms. Jefferies also argues that courts have found that sexual assault can serve as the basis for a substantive due process claim. *See, e.g., Hawkins v. Holloway*, 316 F.3d 777, 782, 784–85 (8th Cir. 2003) (recognizing that defendant's repeated intentional touching of plaintiff's breasts constituted a violation of plaintiff's bodily integrity sufficient to support a substantive due process claim). However, as Mr. Treegoob and the City argue, the conduct at issue in *Hawkins*—sexual assault involving physical contact between the defendant and the plaintiff—were of a different degree than the verbal sexual harassment alleged by Ms. Jefferies. Accordingly, Mr. Treegoob and the City argue that the Court should focus only on caselaw involving non-physical, verbal abuse.

"Substantive due process claims based upon '[n]on-physical types of harassment, including verbal abuse,' are subject to the 'shocks the conscience' analysis." *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x 172, 178 (3d Cir. 2016) (quoting *S.M. v. Lakeland Sch. Dist.*, 148 F. Supp. 2d 542, 547 (M.D. Pa. 2001), *aff'd*, 33 F. App'x 635 (3d Cir. 2002)). "Those courts that have considered instances of psychological or verbal abuse by government actors have typically held that such conduct alone was not severe enough to qualify as a constitutional tort actionable under section 1983." *S.M.*, 148 F. Supp. 2d at 547; *accord Bridges*, 644 F. App'x at 178; *Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1257–58 (10th Cir. 1996). In *Bridges*, the Third Circuit Court of Appeals, "[m]indful of th[e] stringent liability standard" under the "shocks the conscious" analysis, concluded that repeated verbal abuse of an African American student by his teacher "d[id] not rise to the level of a constitutional violation." 644 F. App'x at 178. The teacher's alleged abuse of the student included, *inter alia*, unfairly giving

9

him detention; writing his name on the board to ridicule him in front of his classmates; calling him "dummy," "stupid," and "lazy;" and forcing him to sit by an open window in the winter and a closed window in the summer. *Id.* at 172.

In *Abeyta*, the Tenth Circuit Court of Appeals held that a teacher calling a sixth-grade student a prostitute in front of her class for over a month and a half did not rise to the level of a substantive due process claim. 77 F.3d at 1255, 1258. The Tenth Circuit Court of Appeals stated that it was

> unwilling to hold that actions which inflict only psychological damage may never achieve the high level of "a brutal and inhuman abuse of official power literally shocking to the conscience," necessary to constitute a substantive due process violation. [The Court] can imagine a case where psychological harassment might be so severe that it would amount to torture . . . [but] the actions alleged in the instant case do not reach that level—whether they were done with indifference or with deliberate intent to cause psychological harm.

*Id.* at 1257–58 (citing *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)) (internal citation omitted).

Mr. Treegoob's alleged verbal sexual harassment of Ms. Jefferies is simply "not severe enough to qualify as a constitutional [violation] actionable under section 1983." *S.M.*, 148 F. Supp. 2d at 547. Ms. Jefferies alleges that over a three- to four-year period, Mr. Treegoob made stray remarks to her about her physical appearance. The Court acknowledges that these remarks were low and tasteless and unwelcomed and may well have caused Ms. Jefferies unease and distress at times. But Mr. Treegoob's conduct is not egregious enough to "shock the conscious" such that his remarks and other intermittent harassing conduct can give rise to a substantive due process claim.

Therefore, the Court grants Mr. Treegoob's and the City's motions for summary judgment on the Fourteenth Amendment claims to the extent they assert substantive due process claims.[7]

---

[7] In their summary judgment briefing, Mr. Treegoob and the City do not challenge, nor do they even address, whether Ms. Jefferies has adequately established that they can be subject to § 1983 liability under

10

## II. Title VII Claims and Pennsylvania Human Relations Act Claims

Ms. Jefferies also alleges causes of action for discrimination and retaliation under both Title VII and the PHRA. "Claims under the PHRA are interpreted coextensively with Title VII claims," thus, this section will analyze Ms. Jefferies's discrimination and retaliation claims under the Title VII standard. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006); *accord Pedro v. City Fitness, LLC*, 803 F. App'x 647, 651 n.5 (3d Cir. 2020). Because Ms. Jefferies has not sufficiently alleged that she suffered an adverse employment action, her discrimination and retaliation claims fail, and the Court grants the City's motion for summary judgment as to the Title VII and PHRA discrimination and retaliation claims.

### A. <u>Discrimination</u>

"To establish a prima facie case of discrimination under either Title VII or the PHRA, a plaintiff must show that (1) she belongs to a protected class, (2) she was qualified for the position, (3) she was subject to an adverse employment action, and (4) the adverse action occurred under circumstances that raise an inference of discriminatory action." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 708 (E.D. Pa. 2012) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)). The *McDonnell Douglas* burden-shifting framework applies to claims of discrimination under Title VII. *See Sarullo*, 352 F.3d at 797. So, if the plaintiff sets forth a *prima facie* case of discrimination, the defendant must then offer a legitimate, non-discriminatory reason for the

---

*Monell*. Because the Court finds that Ms. Jefferies has not established the requisite underlying constitutional violation of her procedural or substantive due process rights, the Court need not address the issue of municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (2018). *See Mulholland v. Gov't of Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no [constitutional] violation in the first place, there can be no derivative municipal claim.") (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (providing that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [i]s entirely correct" because "*Monell* does not provide a separate cause of action . . . it *extends* liability to a municipal organization where that organization's failure to train, or [its] policies or customs . . . led to an independent constitutional violation").

11

adverse employment action, and, finally, the plaintiff bears the burden of showing that this purported reason is merely pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

An adverse employment action is "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). "[A]dverse employment actions . . . include[] firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits, giving an employee a potentially less profitable sales position, failing to rehire someone, and revoking a person's office, dismissing her secretary, and assigning her less work." *Friel v. Mnuchin*, 474 F. Supp. 3d 673, 686 (E.D. Pa. 2020) (internal citations and quotation marks omitted).

The parties do not dispute that Ms. Jefferies was a member of a protected class and that she was qualified for her position. Likewise, there is no dispute that the final element is missing, namely there is no adverse employment action. By Ms. Jefferies's own admissions, she did not suffer any adverse employment actions. She admits that she still works for the City of Philadelphia, that her pay has not been reduced, that she has received salary increases totaling $25,000.00 since starting at the City in 2016, that she was not suspended at any time without pay, that she has not received discipline or been reprimanded for her work, and that she has received strong performance reviews and ratings since making her complaint of discrimination on October 2, 2019.

Ms. Jefferies thus fails to state a *prima facie* case of discrimination under Title VII or the PHRA. The Court grants the City of Philadelphia's motion for summary judgment as to the Title VII and PHRA discrimination claims.

## B. **Retaliation**

"To establish discriminatory retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in protected activity by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.*, 1 F.3d 383, 386 (3d Cir. 1995). "[A] plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). With regards to material adversity, the Supreme Court explained that it spoke "of *material* adversity because [it] believe[s] it is important to separate significant from trivial harms. Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Burlington*, 548 U.S. at 68 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68.

The City does not dispute that Ms. Jefferies was engaged in protected activity when she reported Mr. Treegoob's sexual harassment to the City on October 2, 2019. However, the City points out that, as discussed above, Ms. Jefferies did not suffer any adverse employment action. Further, the City argues that Ms. Jefferies did not establish that she experienced any "materially adverse" retaliatory actions that would have dissuaded her from making a charge of discrimination. *Moore*, 461 F.3d at 341. The only alleged conduct which took place after October 2, 2019 does not qualify as retaliation. For example, Ms. Jefferies alleges, and the parties do not dispute, that (1) in late October 2019, Mr. Treegoob punched her cubicle and walked away; (2) in December

13

2019, while Ms. Jefferies was speaking to a new employee, Mr. Treegoob interrupted to say that the new employee should listen to Mr. Treegoob; and (3) in December 2019, Mr. Treegoob sneered at Ms. Jefferies when he got off of the elevator, but he did not say anything directly to her. This conduct is more akin to "petty slights or minor annoyances," *Burlington*, 548 U.S. at 68, than conduct so severe that it might dissuade an employee from engaging in protected conduct. *See Moore*, 461 F.3d at 341.

Ms. Jefferies has failed to make a *prima facie* case of retaliation under Title VII or the PHRA, and the Court thus grants the City of Philadelphia's motion for summary judgment as to the Title VII and PHRA retaliation claims.

## CONCLUSION

For all of these reasons, the Court will grant both Mr. Treegoob's motion for summary judgment and the City's motion for summary judgment. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE